# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

JERRY EXON, JR.,

                    Petitioner,            :    Case No. 3:16-cv-344

    - vs -                            District Judge Walter Herbert Rice
                                           Magistrate Judge Michael R. Merz

NEIL TURNER, WARDEN,
 North Central Correctional Institution,

                                        :

                    Respondent.

---

# REPORT AND RECOMMENDATIONS

---

This habeas corpus case under 28 U.S.C. § 2254 is before the Court for initial review pursuant to Rule 4 of the Rules Governing § 2254 Cases which provides in pertinent part: "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner."

Petitioner pleads the following grounds for relief:

> **Ground One:** Defendant-Appellant was denied effective assistance of counsel by trial counsel per the VI Amend. of the United States Constitution and the standard pursuant to *Strickland v Washington*, 466 U.S. 668.
>
> **Supporting Facts:**
> 1) Trial counsel failed to object to the fact that the lead investigator was present during the States presentment of their case-in-chief and examining their witnesses and then calling him to testify last to support the other witnesses thus violating the separation of witnesses clause.

1

2) Trial counsel failed to raise any challenges for cause as several juror's [sic] were either victims of the same crimes as Petitioner was charged and/or personally knew police officers involved with this case.

3) Trial counsel failed to object when the Prosecution presented other acts evidence that its prejudicial value outweighed its probative value.

**Ground Two:**  The prosecutor's misconduct at trial denied Defendant-Appellant his right to a fair trial under the VI Amend. of the United States Constitution and his right to due process and equal protection of law under the XIV Amend. of the United States Constitution.

**Supporting Facts:**  The Prosecution used other acts evidence that its prejudicial value outweighed its probative value and violated Evidence Rules 403(A) and 404(B).

**Ground Three:**  The trial judge's abuse of judicial discretion denied Defendant-Appellant his right to a fair trial under the VII Amend. of the United States Constitution and his right to due process and equal protection of law under the XIV Amend. of the United States Constitution.

**Supporting Facts:**  The trial court abused its discretion and violated the laws set forth in Blakemore v Blakemore by allowing the Prosecution to use other acts evidence that its prejudicial value outweighed its probative value and violated Evidence Rules 403(A) and 404(B).

**Ground Four:**  The jury's conviction against the sufficiency of the evidence violated Defendant-Appellant's right to due process and equal protection of law under the XIV Amend. of the United States Constitution.

**Supporting Facts:**  The Prosecution failed to present evidence that proved every element of the crime charged for aggravated robbery.

**Ground Five:**  The jury's conviction against the manifest weight of the evidence denied Defendant/Appellant's right to due process and equal protection of law under the XIV Amend. of the United States Constitution.

**Supporting Facts:**  The Petitioner's rights were violated when the jury lost it's [sic] way and convicted him for aggravated robbery

2

> when there was no evidence to show that serious physical harm done as the alleged victim in this case is the only evidence used and no forensic evidence establishes physical harm.

(Petition, ECF No. 1.)

**Procedural History**

In March 2014 Exon was indicted by a Clark County grand jury in connection with the robbery of a Speedway gas station in Springfield, Ohio, on February 16th of that year. *State v. Exon*, Case No. 2014-CA-106, 2016-Ohio-600, ¶ 3, 2016 Ohio App. LEXIS 556 (2nd Dist. Feb. 19, 2016), appellate jurisdiction declined, 145 Ohio St. 3d 1472 (2016). He was convicted at a jury trial on September 10, 2014, and sentenced to the term of incarceration in Respondent's custody that he is now serving or will begin to serve when his sentences on prior convictions expire. *Id.* at ¶ 5. He appealed to the Second District Court of Appeals, which affirmed the conviction. *Id.* He then appealed to the Ohio Supreme Court, which declined to take the case in May 2016. He then timely filed the instant Petition on August 12, 2016.

# Analysis

**Ground One:  Ineffective Assistance of Trial Counsel**

In his First Ground for Relief, Exon claims he received ineffective assistance of trial

counsel in three different instances. Exon raised these same claims on direct appeal. Judge

Froelich's opinion for the Second District decided the claims as follows"

### III.  Ineffective  Assistance  of  Counsel

[*P27]  Counsel's first proposed assignment of error and Exon's first assignment of error claim that trial counsel rendered ineffective assistance.

[*P28]  To establish ineffective assistance of counsel, Exon must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the outcome would have been different. *See Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992); *State v. Rucker*, 2d Dist. Montgomery No. 24340, 2012-Ohio-4860, ¶ 58.

[*P29]  Both appellate counsel and Exon claim that trial counsel acted deficiently during jury selection. Appellate counsel raises that trial counsel did not challenge an alternate juror who knew a lawyer in the prosecutor's office and that counsel did not challenge the racial make-up of the jury pool. Exon argues that his trial attorney made no challenges for cause, even though several potential jurors indicated that they knew police officers or were victims of crime, and trial counsel did not excuse a potential juror who indicated that he wanted a quick verdict due to job obligations.

[*P30]  The record does not reflect the racial make-up of the jury pool. There is nothing in the record to suggest that defense counsel acted deficiently by failing to challenge the jury pool on racial grounds or by failing to challenge the State's use of any peremptory challenges on constitutional grounds.

[*P31]  Crim.R. 24(C) provides fourteen bases for a potential juror to be challenged for cause. In addition, in a criminal case

involving a non-capital felony offense, each party has four peremptory challenges. Crim.R. 24(D).

[*P32] The record indicates that several prospective jurors knew or were related to police officers and many potential jurors had previously been victims of crimes, including theft offenses. However, these prospective jurors indicated that they could be fair and impartial, and several of the prospective jurors were dismissed by means of peremptory challenges. We find no arguable claim based on defense counsel's failure to make any challenge for cause or his use of peremptory challenges.

[*P33] Exon also asserts that trial counsel was deficient for failing to challenge Detective DeWine's presence in the courtroom during the trial. He contends that there should have been a separation of witnesses.

[*P34] Evid.R. 615(A) provides that, at the request of a party, the court shall order witnesses be excluded from the courtroom so that they cannot hear the testimony of other witnesses. The court may also order the separation of witnesses on its own motion. This exclusion does not apply to certain persons, including "an officer or employee of a party that is not a natural person designated as its representative by its attorney." Evid.R. 615(B)(2).

[*P35] The record reflects that Detective DeWine, who was seated at the prosecutor's table, was introduced to the jury at the beginning of jury selection. Although the record does not include a request by the State for Detective DeWine to be designated the State's representative at trial, DeWine was the lead detective in the case, and it is apparent that DeWine sat at the prosecutor's table as the State's representative during the trial. And, Exon has not asserted that DeWine's testimony would have been different had he not been permitted to sit with the prosecutor. We find no arguable claim that Exon's trial counsel acted deficiently in failing to challenge DeWine's presence in the courtroom during the trial.

[*P36] Exon argues that trial counsel's "worst mistake" was his failure to object to Reynolds's testimony that he had known Exon from his (Reynolds's) employment at a different store and that employees "had issues" with Exon. Exon claims that this testimony amounted to testimony that Exon had committed prior crimes.

[*P37] Immediately after Reynolds testified that he recognized Exon and McWhorter from employment at a different store and that "we've had issues," the trial court asked counsel to approach.

The court stated: "I don't have any problem with what he said so far, but I want to make sure he knows he's not supposed to mention anything about his prior. * * * I just want to make sure it doesn't go any further." The following exchange then occurred:

> [Prosecutor]: So these were two gentlemen that you had seen coming into the Speedway location before.
>
> Reynolds: Actually, I used to work at a liquor store and they had — we had issues with them.
>
> [Defense counsel]: Objection, Your Honor.
>
> [Prosecutor]: Okay. My question is you were familiar — Reynolds:                                          Yes.
>
> [Prosecutor]: -- with who they were.
>
> Reynolds: Yes.

No further mention was made of any prior conduct by Exon.

 [*P38]  We find no arguable claim trial counsel acted deficiently when he failed to object to Reynolds's testimony that he had prior "issues" with Exon. Reynolds's testimony did not reference any prior criminal conviction or necessarily indicate that Exon had engaged in prior criminal conduct. Trial counsel could have reasonably believed that an objection would highlight Reynolds's testimony about prior "issues," and the trial court's immediate handling of the matter reflected that the court would have overruled the objection at that time. Further, the trial court made clear that it would not permit the State to elicit testimony regarding Exon's criminal history. When, upon further questioning, Reynolds clarified that he had had "issues" with Exon while employed at a liquor store, Exon's trial counsel objected. Trial counsel's conduct did not fall below an objective standard of reasonableness.

*State v. Exon, supra.*

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131

S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Because the Ohio Supreme Court did not take jurisdiction on appeal, the federal habeas court looks to the last explained decision in the state courts. *Ylst v. Nunnemaker*, 501 U.S. 797 (1991). In this case that is the opinion of the Second District Court of Appeals.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S. 111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the

> presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694.  *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987).  *See generally* Annotation, 26 ALR Fed 218.

The Second District's opinion demonstrates it understood and applied the correct federal constitutional standard as adopted in *Strickland v. Washington, supra.*  This Court concludes that the Second District's application of *Strickland* was not objectively unreasonable.

As to possible objections to potential jurors for cause, Judge Froelich points out that all of the prospective jurors who had been victims of crime or were acquainted with police officers had assured Judge O'Neill that they could be fair and impartial and several were dismissed on peremptory challenge.  *State v. Exon, supra,* ¶ 32.  Under those circumstances a challenge for cause would very likely have been unsuccessful and it is not deficient performance on the part of a trial attorney to fail to raise a claim which is likely to be rejected.  Exon may not believe that people with those background facts would be fair and impartial, but a trial judge's conclusion to that effect is very hard to challenge.

As to trial counsel's failure to challenge the presence of the lead investigator in the courtroom during the testimony of other witnesses, such a challenge would have also been

unsuccessful under Ohio R. Evid. 615(B)(2).

Exon's last ineffective assistance of trial counsel claim is that his attorney failed to object to the admission of other acts evidence. As the Second District found, the testimony of Mr. Reynolds' that he recognized Exon and had had "issues" with him was carefully limited by both trial counsel and Judge O'Neill to make certain Exon's prior conviction was not mentioned. The term "issues" is neutral; it does not convey Reynolds' opinion or belief, if he had one, that Exon had engaged in prior criminal conduct. And the record shows, of course, that trial counsel did not fail to object, unless what happened was a *sua sponte* intervention by Judge O'Neill. *See* ¶ 37, *supra*. It is not ineffective assistance of trial counsel to fail to make an objection when the trial judge raises the issues himself or herself.

Because the Second District's decision on Exon's ineffective assistance of trial counsel claim is neither contrary to nor an objectively unreasonable application of *Strickland*, Ground One should be dismissed.


**Ground Two: Prosecutorial Misconduct**


In his Second Ground for Relief, Exon claims he was denied a fair trial by the prosecutor's use of other acts evidence. This was Exon's second assignment of error on direct appeal which the Second District decided as follows:

> IV. Prosecutorial Misconduct
>
> [*P39] Appellate counsel's second proposed assignment of error and Exon's second assignment of error claim that the prosecutor engaged in misconduct, violating Exon's right to due process.

[*P40] In reviewing claims of prosecutorial misconduct, the test is whether the prosecutor's remarks or conduct were improper and, if so, whether those comments prejudicially affected the substantial rights of the defendant. *State v. Jones*, 90 Ohio St.3d 403, 420, 2000 Ohio 187, 739 N.E.2d 300 (2000). The touchstone of analysis is the fairness of the trial, not the culpability of the prosecutor. *Id.*, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). Where it is clear beyond a reasonable doubt that the jury would have found the defendant guilty, even absent the alleged misconduct, the defendant has not been prejudiced, and his conviction will not be reversed. *See State v. Underwood*, 2d Dist. Montgomery No. 24186, 2011-Ohio-5418, ¶ 21. We review allegations of prosecutorial misconduct in the context of the entire trial. *State v. Stevenson*, 2d Dist. Greene No. 2007-CA-51, 2008-Ohio-2900, ¶ 42, citing *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).

[*P41] First, we find nothing improper in the State's asking Reynolds whether he knew either of the individuals who came into the Speedway on February 16. The fact that Reynolds recognized Exon from prior encounters was relevant to the accuracy of his identification. The prosecutor's question did not ask for details about the prior encounters or encourage Reynolds to testify about Exon's prior criminal conduct.

[*P42] Second, Exon asserts that the prosecutor engaged in misconduct when Reynolds testified to the "mug shots" that he reviewed. After Reynolds testified that he had been asked to look at photo arrays, the prosecutor handed Reynolds State's Exhibit B-2 and asked Reynolds to identify the exhibit. Reynolds responded, "It's the mug shots of the gentlemen that they had me check out when they asked." The prosecutor then asked Reynolds if he was able to identify one of the individuals as being involved in the February 13 incident. Reynolds responded that he was able to, and he indicated the number of the photo that he had selected. Reynolds testified similarly regarding State's Exhibit C-2, the second photospread.

[*P43] The prosecutor did not refer to the photographs in the photospreads as mug shots, nor did the prosecutor make any reference to the fact that individuals in the photographs might have criminal records. When Detective DeWine testified about the photospreads, he testified that Exhibit B-2 was "a photo array composite that I have assembled from the NWS system." He testified that Exhibit C-2 was "also a photo array composite that I

put together." The prosecutor did not elicit any testimony as to the source of the photographs. We find no improper conduct by the prosecutor in his questioning about the photo arrays.

[*P44] Third, Exon asserts that the prosecutor engaged in misconduct when, during the State's examination of Reynolds, the prosecutor asked if Reynolds had "ever been punched in the head before while you were at work at Speedway." (Tr. at 100.) Defense counsel objected on relevance grounds, but the objection was overruled. Reynolds responded, "No."

[*P45] We agree with Exon that this question was irrelevant to the issues before the jury. However, we find no basis to conclude that the question and its answer, in the context of the entire trial, resulted in any prejudice to him.

[*P46] Upon review of the record, we conclude that Exon's right to due process was not violated as a result of prosecutorial misconduct.

*State v. Exon, supra.*

The Sixth Circuit Court of Appeals has articulated the governing standard for habeas claims of prosecutorial misconduct:

The relevant question in analyzing a claim for prosecutorial misconduct on habeas review is "whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (internal quotation marks omitted). To satisfy this standard, the conduct must be both improper and flagrant. *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006); *see also Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (noting that reversal is required if the prosecutor's misconduct is "so pronounced and persistent that it permeates the entire atmosphere of the trial or so gross as probably to prejudice the defendant") (internal citation omitted). If conduct is found to be improper, four factors are then considered to determine whether the conduct was flagrant and therefore warrants reversal: "(1) the likelihood that the remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) the total strength of the evidence against the defendant." *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir. 2005).

11

*Johnson v. Bell*, 525 F.3d 466, 482 (6th Cir. 2008).

The record as reviewed by the Second District simply does not show any unconstitutional prosecutorial misconduct.  The phrase "mug shots," which probably conveyed to the jury that they were photographs taken on booking someone into a jail, was witness Reynolds' word, not the prosecutor's.  It was perfectly proper, indeed crucial to the state's case, to elicit an identification from Reynolds and what the prosecutor had were two photo arrays prepared by Detective DeWine, who did not identify them as "mug shots."  Indeed, the record does not show that the photo arrays were in fact prepared from booking photographs.

As to the prosecutor's question to Reynolds about whether he had ever been punched in the head before during his employment with Speedway, the Magistrate Judge agrees with Judge Froelich that the question was likely to elicit irrelevant information, but asking this single question did not amount to flagrant or repeated misconduct and the Second District's finding of harmlessness (no prejudice) is clearly correct.

The Second Ground for Relief should be dismissed.


**Ground Three:  Abuse of Judicial Discretion in Allowing Other Acts Evidence**


In his Third Ground for Relief, Exon claims the trial judge abused his discretion in allowing "other acts" evidence to be presented to the jury.  He asserts he presented this claim in state court (Petition, ECF No. 1, PageID 2), but it is not reflected anywhere in Judge Froelich's opinion.  The only arguable "other acts" evidence reflected in the opinion are the "mug shots" and "had issues" comments from Reynolds.  The record as quoted by Judge Froelich shows that

Judge O'Neill was very careful to prevent any reference to a prior bad act with respect to the "had issues" comment. In any event, a trial judge's abuse of discretion is not a violation of the United States Constitution; abuse of discretion is not a denial of due process *Sinistaj v. Burt,* 66 F.3d 804 (6th Cir. 1995). A federal habeas court can grant relief only for constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010); *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990); *Smith v. Phillips,* 455 U.S. 209 (1982); *Barclay v. Florida,* 463 U.S. 939 (1983).

The Third Ground for Relief should therefore be dismissed.

## Ground Four:  Sufficiency of the Evidence

In his Fourth Ground for Relief Exon claims the prosecution failed to prove every element of the crime of aggravated robbery.[1]  This claim was also presented to the Second District Court of Appeals and decided by it in conjunction with his manifest weight of the evidence claim as follows:

### II. Sufficiency and Manifest Weight of the Evidence

 [*P8]  Counsel's third potential assignment of error and Exon's fourth and fifth assignments of error claim that his conviction for robbery, in violation of R.C. 2911.02(A)(2), was based on insufficient evidence and was against the manifest weight of the evidence.

 [*P9]  A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a

---

[1]  Exon uses the term "aggravated robbery" in his Petition.  However, he was charged with "simple," not "aggravated" robbery.  *State v. Exon, supra,* ¶ 3.  The elements of those two crimes are different under Ohio law.

matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541 (1997).

[*P10]  In contrast, "a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *Wilson* at ¶ 12. *See Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19 ("'manifest weight of the evidence' refers to a greater amount of credible evidence and relates to persuasion"). When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 20 Ohio B. 215, 485 N.E.2d 717 (1st Dist.1983).

[*P11]  Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 Ohio App. LEXIS 3709, 1997 WL 476684 (Aug. 22, 1997). However, we may determine which of several competing inferences suggested by the evidence should be preferred. *Id.* The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

[*P12]  The State presented six witnesses at trial. Exon did not present any witnesses. The State's evidence at trial established the following facts:

[*P13]  In the early morning hours of February 16, 2014, Richard Reynolds was the sole employee at the Speedway gas station and convenience store on North Bechtle Avenue in Springfield. The store has beverage coolers along the walls on the right side of the store, upon entering the front door. The counter is located to the left of the front door. A cigarette storage room is located down a short hallway near the counter area.

14

[*P14] At approximately 4:32 a.m., Exon and another man, Henry McWhorter, entered the Speedway store. McWhorter repeatedly tried to get Reynolds's attention, asking him various questions about milk and orange juice products. Reynolds tried not to walk too far from the counter, but he would step halfway through the store to answer the questions. After the third time, Reynolds told McWhorter that he could not keep coming over. At that time, Reynolds noticed that Exon was no longer in sight.

[*P15] Reynolds looked into the cigarette room and saw Exon "stashing cartons in his shirt." Reynolds told Exon to "drop them and let them go." Exon placed two cartons of cigarettes on a table in the room. McWhorter then "stepped up on" Reynolds, making Reynolds feel "uneasy." Reynolds told Exon and McWhorter to leave. The men stood there for a moment, and Exon "looked at [Reynolds] in a threatening way." Reynolds stepped back and told Exon to go. Exon walked out of the storage room past Reynolds, and Reynolds followed Exon and McWhorter toward the front door. Reynolds told them that he was going to call the police.

[*P16] As Exon neared the front door, Reynolds noticed that Exon had a carton of cigarettes under his left arm. Reynolds started to reach for the carton to retrieve it. Exon turned and punched Reynolds in the face, hitting him on the chin. Exon looked Reynolds in the eye, dropped the carton, left the store, and got into a car. The car was driven by a third individual who had not entered the store. Reynolds pressed the panic button at the store and waited for the police to arrive.

[*P17] The State presented surveillance video from the Speedway, and Reynolds described the events as the video was played for the jury.

[*P18] Springfield Police Officers Jerrod Osborne and Tyler Elliott responded to the Speedway. Osborne spoke with Reynolds, and both officers reviewed the surveillance video with him. Osborne recognized McWhorter from the surveillance video; Elliott recognized both McWhorter and Exon. The matter was referred to a detective for the preparation of a photo lineup.

[*P19] Springfield Police Officer Sandy Fent testified that she showed two photospreads to Reynolds on February 18, 2014. She did not know any details about the case. Fent testified that Reynolds identified the photos for McWhorter and Exon.

15

 **[\*P20]** Reynolds testified that, on February 18, he reviewed two photospreads prepared by the police. Reynolds identified Exon and McWhorter as the individuals involved in the offense. Reynolds also testified that he had seen both men before at a liquor store at which he (Reynolds) had worked and that "we've had issues." Reynolds identified Exon as the man who had been in the cigarette storage room.

 **[\*P21]** Detective Dan DeWine testified that he was assigned to the case, reviewed the reports, and viewed the surveillance video. He assembled photospreads concerning each suspect. As part of his investigation, DeWine also located the driver of the vehicle and spoke to him and McWhorter. DeWine concluded that McWhorter and Exon had participated in the incident in the store.

 **[\*P22]** On appeal, Exon does not argue that he was not involved in the theft of cigarette cartons from the Speedway store. To the contrary, he admits his participation in the theft. Exon argues, however, that he did not cause physical harm to Reynolds.

 **[\*P23]** R.C. 2911.02, the robbery statute, provides:

> (A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
>
> (1) Have a deadly weapon on or about the offender's person or under the offender's control;
>
> (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;
>
> (3) Use or threaten the immediate use of force against another.

Physical harm to persons is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). A violation of R.C. 2911.02(A)(1) or (2) is a second-degree felony. R.C. 2911.02(B). A violation of R.C. 2911.02(A)(3) is a third-degree felony. *Id.*

 **[\*P24]** Reynolds testified that Exon punched him on the chin when he (Reynolds) reached for the cigarette carton under Exon's left arm. A still photograph from the surveillance video, which captures only the left side of Reynolds's head and shoulder, also appears to show a fist making contact with the left side of

16

Reynolds's jaw. Reynolds stated that Exon made "solid contact," but it hurt his "pride more than anything." When asked on cross-examination about his testimony that the only injury he sustained was to his ego, Reynolds responded, "I mean other than the slight pain that I felt in my jaw for a few hours; yeah, my ego was more hurt than anything."

[*P25] Reynolds's testimony, if believed, was sufficient to establish that, in attempting or committing a theft offense, Exon had inflicted or attempted to inflict physical harm on Reynolds. Reynolds testified that Exon punched him on the chin. Although he stated that his ego was hurt more than anything, he indicated that he felt slight pain in his jaw for a few hours after the assault. Moreover, a jury could reasonably conclude that, by punching Reynolds, Exon attempted to inflict physical harm. *See State v. McKinnon*, 7th Dist. Columbiana No. 09 CO 17, 2010-Ohio-2145, ¶ 20 (hitting or trying to punch store employee constituted the infliction or attempt to inflict physical harm). Upon review of the entire trial transcript, the jury did not lose its way when it convicted Exon of robbery, in violation of R.C. 2911.02(A)(2).

[*P26] Exon's conviction for robbery, in violation of R.C. 2911.02(A)(2), was neither based on insufficient evidence or against the manifest weight of the evidence.

*State v. Exon, supra.*

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 319; *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.* A sufficiency challenge should be assessed against the elements of the crime, not against the elements set forth in an erroneous jury instruction. *Musacchio v. United States,* 577 U.S. ___, 136 S. Ct. 709, 193 L. Ed. 2d 639 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard,* 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict *under Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger*, 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" Ibid. (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062 (2012)(per curiam).

Analysis of Ground Four under this precedent is not difficult. Reynolds testified that Exon punched him in the jaw. Neither Exon nor anyone else testified that that did not happen. Thus the jury heard uncontradicted testimony that Exon inflicted physical harm on Reynolds. Whether this conduct is evaluated under Ohio Revised Code § 2911.02(A)(2) as infliction or attempt to inflict physical harm or under 2911.02(A)(3) as the use of force, it is plainly sufficient for conviction.

Ground Four should therefore be dismissed.

19

**Ground Five:  Manifest Weight of the Evidence**

In Ground Five Exon asserts his conviction is against the manifest weight of the evidence.  As noted above, federal habeas relief is available only for constitutional violations.  But a manifest weight claim does not arise under the United States Constitution.  *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986).

In the body of the Petition in Ground Five, Exon mentions that there was no forensic evidence of physical harm.  No such evidence was needed.  It is common knowledge, within the understanding of any juror, that being punched in the chin hurts.  Reynolds testified that Exon punched him and no witness contradicted that testimony.  When cross-examined on this point, Reynolds testified he felt "slight pain" for several hours.  *State v. Exon, supra,* at ¶ 24.

Ground Five should therefore be dismissed.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be DISMISSED WITH PREJUDICE.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be

permitted to proceed *in forma pauperis*.

August 15, 2016.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).